# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RICHARD WALLA,

Appellant,

v.

DEPARTMENT OF HOMELAND
SECURITY,

Agency.

DOCKET NUMBER
SF-1221-17-0282-W-2

DATE: January 15, 2025

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Joy Bertrand, Esquire, Scottsdale, Arizona, for the appellant.

Lauren J. Barefoot, Esquire, San Diego, California, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in an individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, and find that the agency did not prove by

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

clear and convincing evidence that it would have issued two proposed 3-day suspensions or an oral counseling in the absence of the appellant's whistleblowing. Therefore, we GRANT the appellant's request for corrective action with respect to the agency's proposed suspensions and issued oral counseling.

## BACKGROUND

The appellant holds a Supervisory Border Patrol Agent (SBPA) position with the U.S. Customs and Border Protection at the Indio Border Patrol Station. *Walla v. Department of Homeland Security*, MSPB Docket No. SF-1221-17-0282-W-1, Initial Appeal File (IAF), Tab 14 at 4-5. On March 31, 2014, the appellant emailed his supervisor regarding allegations that Border Patrol Agent (BPA) A.R. had arrived 3 hours late to an assignment after riding in the vehicle of a canine handler (BPA H.P.), and that BPA A.R. had twice left his assigned work area to visit a girlfriend. *Id.* at 40; *Walla v. Department of Homeland Security*, MSPB Docket No. SF-1221-17-0282-W-2, Appeal File (W-2 AF), Hearing Transcript (HT) at 118-19, 122-23, 163-65, 168 (testimony of the appellant). In early April 2014, the appellant reported to his chain-of-command that BPAs H.P. and A.R. allegedly had been insubordinate and had made false statements after being directed to write memorandums about their conduct. HT at 120-21, 123-24, 165-67 (testimony of the appellant).

Thereafter, on April 11, 2014, the National Border Patrol Council (union) filed a grievance on behalf of BPA H.P. accusing the appellant of sexual harassment in 2008 and 2014. IAF, Tab 13 at 26-30. That same day, Deputy Patrol Agent in Charge (DPAC) M.L. forwarded the complaint to the Joint Intake Center (JIC), an intake center that is operated by the agency's Office of the Inspector General. *Id.* at 25; HT at 52. On April 28, 2014, the JIC remanded the case back to the appellant's management. IAF, Tab 13 at 7, 19. That same day, Assistant Chief Patrol Agent (ACPA) P.W. directed Field Operations Supervisor

(FOS) M.G. to conduct a Management Inquiry (MI). *Id.* at 7, 33. According to DPAC M.L., the decision of whether to conduct an MI after the JIC remands a case to management is discretionary. HT at 12. In August 2014, FOS M.G. completed the MI and issued a Report of Investigation (ROI) concluding that the allegations against the appellant were substantiated. IAF, Tab 13 at 7-17.

In a letter dated October 30, 2014, ACPA P.W. proposed to suspend the appellant for 3 days based on unprofessional conduct. IAF, Tab 10 at 17-19. The proposal letter specifies that the appellant inadvertently exposed himself to BPA H.P. and SBPA D.G. in 2008. *Id.* at 17. In a letter dated February 13, 2015, ACPA B.W. rescinded the October 2014 proposal letter and again proposed the appellant's 3-day suspension for unprofessional conduct.[2] *Id.* at 20-22. The second proposal letter specifies that the appellant had a conversation of a sexual nature with BPA H.P. in front of SBPA E.G. in February 2014. *Id.* at 20. In a letter dated April 29, 2015, Deputy Chief Patrol Agent (DCPA) R.V. decided to mitigate the proposed 3-day suspension to an oral counseling. *Id.* at 23-24.

The appellant then filed a complaint with OSC alleging that the agency had retaliated against him for reporting the misconduct of subordinates. W-2 AF, Tab 5 at 93-96, 99; IAF, Tab 1 at 5, 13-18. On December 30, 2016, OSC informed the appellant that it had closed his complaint and notified him of his right to file an IRA appeal with the Board. W-2 AF, Tab 5 at 98-100.

The instant appeal followed, and the appellant requested a hearing. IAF, Tab 1 at 1-7. After holding a hearing on the merits, the administrative judge issued an initial decision denying the appellant's request for corrective action. W-2 AF, Tab 11, Initial Decision (ID) at 1-2, 13. Specifically, the administrative judge found that the appellant made nonfrivolous allegations of Board jurisdiction and that it was undisputed that he exhausted his remedies with OSC. ID

---

[2] Although the February 2015 proposal letter refers to a proposal letter issued to the appellant on November 14, 2014, IAF, Tab 10 at 20, it is undisputed that the agency was referring to the October 2014 proposal letter, Petition for Review File, Tab 3 at 15.

at 1, 2 n.3.   The administrative judge further found that the appellant made protected disclosures that were a contributing factor in the agency's personnel actions.   ID at 8-9.   Finally, the administrative judge found that the agency proved by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's protected disclosures, and he therefore denied corrective action.  ID at 9-13.

The appellant has filed a petition for review, and the agency has filed a response.[3]  Petition for Review (PFR) File, Tabs 3, 9.

## DISCUSSION OF ARGUMENTS ON REVIEW

To establish a prima facie case of whistleblower retaliation, an appellant must prove by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him.   5 U.S.C. § 1221(e)(1);[4] *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).   If the appellant makes out a prima facie case, the agency is given an opportunity to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure.  5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.   In determining whether an agency has met this burden, the Board will consider all of the relevant factors, commonly known as the *Carr* factors, including the following:   (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the

---

[3] The agency's deadline to file a response to the appellant's petition for review was January 26, 2018.   PFR File, Tab 8.   This deadline was automatically extended by 3 days due to the Federal-Government shutdown from January 20 through 22, 2018.   Therefore, the agency's response filed on January 29, 2018, was timely filed.  PFR File, Tab 9.

[4] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017.   Section 1097 of the NDAA amended various provisions of Title 5 of the U.S. Code.   Our decision to deny the appellant's request for corrective action in this IRA appeal would be the same under both pre- and post-NDAA law.

decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence; rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Lu*, 122 M.S.P.R. 335, ¶ 7. The Board must consider all pertinent record evidence in making this determination, and it must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015).

The appellant proved a prima facie case of whistleblower reprisal.

Here, the administrative judge found that the appellant made protected disclosures to his superiors of alleged wrongdoing by his subordinates. ID at 8.[5] The administrative judge further found that the disclosures were a contributing factor in the agency's personnel actions, including two proposed suspensions, an oral counseling, a reassignment to a position without the possibility of night or Sunday pay differentials, and the denial of a cash award and the opportunity to apply for promotions and acting positions.[6] ID at 8-9 & n.8. The appellant does

---

[5] To the extent the agency argues that the appellant's reports of insubordination and false statements by his subordinates are not protected disclosures, we do not agree. PFR File, Tab 9 at 7 n.2. The Board has suggested that an agency "rule" includes established or authoritative standards for conduct or behavior. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 25 (2013). Accordingly, we find that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the subordinates' alleged insubordination and false statements evidenced a violation of an agency rule. *Id.* (finding that the appellant's disclosure that an employee borrowed money from a patient was protected because a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the conduct violated an agency rule).

[6] The agency claims that the record does not establish a nexus between the agency's knowledge of the appellant's email to his supervisor and the union's action of filing a

not dispute, and we discern no reason to disturb, such findings.[7] PFR File, Tab 3. Accordingly, we find that the appellant proved a prima facie case of whistleblower reprisal regarding those personnel actions.

In his petition for review, the appellant reasserts his argument that the agency's MI investigation, which led to the challenged personnel actions, was itself retaliation for his whistleblowing. IAF, Tab 10 at 10-11; PFR File, Tab 3 at 18-24. The administrative judge did not explicitly consider this claim in the initial decision, ID at 8-9, and we take the opportunity here to review how such claims are properly analyzed. Since the issuance of the initial decision, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has clarified that "a retaliatory investigation, either on its own or as part of a broader set of circumstances, may qualify as a personnel action if it rises to the level of a 'significant change in . . . working conditions.'" *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020) (internal quotations omitted);[8] *see also Skarada v. Department of Veterans Affairs*, 2022 MSPB 17,

grievance. PFR File, Tab 9 at 7 n.2. However, the union's grievance is not a personnel action under 5 U.S.C. § 2302(a)(2)(A); thus, the appellant does not have to prove contributing factor regarding the grievance. *See Lu*, 122 M.S.P.R. 335, ¶ 7.

[7] The administrative judge made statements expressly disagreeing with OSC's conclusions that the appellant's disclosures might not be protected and that a letter of counseling is not a personnel action. ID at 8 nn.7-8; W-2 AF, Tab 5 at 95. We clarify that the Board has not considered OSC's conclusions as part of its analysis. *See Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶ 16 (2012) (observing that an IRA appeal is a de novo action and that the Board must rely on its independent analysis of the parties' evidence, not on OSC's characterizations of the appellant's allegations).

[8] Notwithstanding this holding, the court confirmed the long-standing principle that retaliatory investigations, in and of themselves, do not qualify as personnel actions but instead may provide a basis for additional corrective action if raised in conjunction with one or more of the qualifying personnel actions specified in 5 C.F.R. § 2302(a)(2)(A). *Sistek*, 955 F.3d at 955. Further, as set forth below, the Board may consider evidence regarding the conduct of such an investigation when it is so closely related to a qualifying personnel action that it could have been a pretext for gathering evidence to retaliate against an employee for whistleblowing activity. *Id.* at 957. As also set forth below, when, as in this case, an investigation is also found to create a significant change in working conditions, it constitutes a personnel action by virtue of this causative connection with one of the enumerated personnel actions under

¶ 16 (stating that agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii)).

In the present case, the appellant has asserted that the investigation here significantly changed his working conditions because it was accompanied by a reassignment to a position without the possibility of night or Sunday pay differentials, and caused the agency to deny him a cash award and the opportunity to apply for promotions and acting positions. HT (testimony of the appellant); PFR File, Tab 3 at 6, 12. The agency has not disputed these assertions. HT at 13-14, 20-23, 31-33 (testimony of DPAC M.L.). Thus, we find that the investigation significantly changed the appellant's working conditions and therefore constituted a personnel action under 2302(a)(2)(A)(xii). Moreover, we further find no reason to disturb the administrative judge's holding that the appellant's supervisors and other management officials were aware of his disclosures before the investigation was initiated, and therefore, we conclude that the appellant has proven that his whistleblowing activity was a contributing factor with respect to the agency's initiation of the investigation in question. ID at 8-9. As set forth more fully below, evidence regarding the agency's motive in initiating the investigation will be considered as part of the agency's clear and convincing burden, specifically, under *Carr* factor 2.

<u>The agency proved by clear and convincing evidence that it would have investigated and reassigned the appellant, but not that it would have proposed or issued any disciplinary action, in the absence of the appellant's whistleblowing.</u>

Applying the *Carr* factors, and for the reasons set forth below, we find that the agency proved by clear and convincing evidence that it would have investigated and reassigned the appellant, and therefore, denied him an acting position, opportunity for a promotion, and cash award, in the absence of his

_____

section 2302(a)(2)(A).

whistleblowing. *See Lu*, 122 M.S.P.R. 335, ¶ 7. However, we find that the agency did not prove by clear and convincing evidence that it would have issued any disciplinary action in the absence of the appellant's whistleblowing. *Id*.

> *The agency had evidence to support investigating and reassigning the appellant, which caused the subsequent consequences.*

Relying on the testimony of DPAC M.L., the administrative judge found that the agency presented strong evidence in support of its decision to investigate and reassign the appellant, deny him a cash award, and find him ineligible for promotions and acting positions because of the investigation. ID at 9-10; HT at 13-14, 20-23, 31-33 (testimony of DPAC M.L.). We agree and find that the agency had strong reasons for initiating an investigation upon learning of BPA H.P.'s allegation that the appellant sexually harassed him. *See Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 12 (stating that, to maintain the integrity of the working environment, an employer should thoroughly investigate allegations of possible employee wrongdoing). Specifically, we credit the agency's assertion that it has a duty, pursuant to law and agency policy, to investigate and address all sexual harassment complaints. PFR File, Tab 9 at 8. We also discern no reason to disturb the administrative judge's finding that, because of the investigation into the serious allegations against the appellant, he was reassigned, was not allowed to hold an acting position, and was ineligible for a cash award or a promotion. ID at 9-10.

> *The agency's disciplinary actions were unwarranted.*

Regarding the agency's disciplinary actions, the administrative judge found that the appellant's own testimony during the MI investigation was sufficient to support some disciplinary action. ID at 9. It is true that the appellant admitted during the investigation, in a signed, sworn affidavit, that he had accidentally exposed himself in 2008, and had joked about the incident with BPA H.P. in 2014. IAF, Tab 10 at 17-22, Tab 13 at 71-75. The appellant has consistently claimed that his affidavit was inaccurate and coerced. IAF, Tab 10 at 8-9; HT

at 131-33, 174-76 (testimony of the appellant); PFR File, Tab 3 at 15. However, we need not make any findings related to whether the appellant's affidavit was coerced because, in light of the evidence gathered from the investigation, there was no actionable misconduct, and thus, disciplinary action was not warranted.

First, the agency had no basis to propose a suspension based on the fact that the appellant "inadvertently exposed [his] genitals" in 2008. IAF, Tab 10 at 17. Regardless of the fact that the agency rescinded the proposal, as the agency concedes, the incident was "inadvertent[]" and occurred 6 years prior to the proposed suspension. *Id.* Therefore—because the evidence shows the event was accidental—there was never any basis to propose disciplinary action. Similarly, the agency's second proposed 3-day suspension, mitigated to an oral counseling, was an excessive reaction to a conversation which, according to the evidence, was nothing more than friendly, good-natured ribbing between colleagues. *Id.* at 20-23. Indeed, SBPA E.G., who was present during the conversation, stated that the appellant and BPA H.P. were "comfortable and no one appeared bothered by the comments," and that the appellant and BPA H.P. were merely "teasing" or "joking around," as they often did. IAF, Tab 13 at 61-62. She further stated that "there was nothing wrong with what happened," and that BPA H.P.'s allegations were "just a bunch of lies" designed to cause trouble because he was facing disciplinary action due to the appellant's reports. *Id.*

Other agency officials were also incredulous of the agency's handling of the appellant's matter, including DPAC M.L., who testified that the agency's actions were "silly," and DPAC R.V. who, according to the appellant, apologized to him for the matter being a "clusterfuck."[9] HT at 29-30 (testimony of DPAC M.L.); IAF, Tab 10 at 9. This incredulousness is further underscored by the fact that the agency denied BPA H.P.'s grievance against the appellant in

---

[9] DPAC R.V. did not testify at the hearing, and despite several opportunities, the agency has not disputed that DPAC R.V. made this statement.

October 2014, finding that the appellant had not violated the agency's standards of conduct, including the provision requiring employees to behave professionally. IAF, Tab 12 at 24-28. However, several months later, the agency alleged in the proposed suspension that the conversation between the appellant and BPA H.P. violated that exact provision of the standards of conduct—i.e., the provision requiring employees to act professionally. *Compare* IAF, Tab 12 at 26, *with* Tab 10 at 20-21. Therefore, the agency's denial of the grievance undermines the agency's position that the appellant committed actionable misconduct.

In conclusion, we find that the agency had sufficient evidence at the time it proposed and issued the disciplinary actions to recognize what had happened, specifically, that BPA H.P. accused the appellant of misconduct in an attempt to deflect attention away from potential disciplinary action for his own malfeasance, which was reported by the appellant. Although we agree that the agency had a duty to investigate BPA H.P.'s allegations and that it was proper for the agency to reassign the appellant while that investigation was pending, based on the results of the investigation, there was no basis for further action. The record simply does not support a finding that the appellant committed any actionable misconduct, and thus, the agency's two proposed suspensions and the oral counseling were unwarranted.

*The relevant management officials did not have a motive to retaliate.*

Regarding the second *Carr* factor, the administrative judge found that there was no evidence that the agency officials who were involved in the personnel actions had a motive to retaliate against the appellant. ID at 10-12. In particular, although he acknowledged that the union's grievance was filed in response to the appellant's disclosures in order to diminish the appellant's credibility, he found that BPA H.P.'s retaliatory motive could not be ascribed to the agency. ID at 11-12.

Evidence as to whether an investigation was a retaliatory act, that is, whether the investigation was initiated by agency officials with a motive to

retaliate against the appellant for his or her whistleblowing activity, is properly analyzed under *Carr* factor 2, the existence and strength of any motive to retaliate on the part of agency officials who were involved in the decision to take a personnel action against the appellant. *See, e.g.*, *Geyer v. Department of Justice*, 70 M.S.P.R. 682, 688-91 (1996) (holding that the lack of a retaliatory motive was shown by evidence that the deciding official did not specify who was to conduct the investigation, how it was to be done, or which witnesses should be interviewed),[10] *aff'd*, 116 F.3d 1497 (Fed. Cir. 1997) (Table); *Mongird v. Department of the Navy*, 33 M.S.P.R. 504, 507 (1987) (remanding for further development of the record because the appellant was not permitted to present evidence and argument regarding the non-bona fides of the agency investigation from which a retaliatory motive for the suspension could be inferred). In considering such evidence, the Board looks to where the investigation had its beginnings, in other words, to the motives of the agency officials responsible for initiating the investigation.[11] *See Russell v. Department of Justice*, 76 M.S.P.R. 317, 324 (1997).

On review, the appellant argues that the genesis of the investigation was the union's efforts to slander and discredit him in resistance to his reports of

---

[10] Although the appellant relies on *Geyer* in support of his assertion that the agency's investigation was retaliatory, PFR File, Tab 3 at 21-23, in that case, the Board found that the agency did not initiate an investigation into the appellant's alleged misconduct as a pretext for retaliation, *Geyer*, 70 M.S.P.R. at 698.

[11] The weighing of the *Carr* factors is somewhat modified in the context of a retaliatory investigation claim. For example, *Carr* factor 1, the strength of the evidence in support of the agency's personnel action, is evaluated based on the evidence before the officials who initiated the investigation, rather than that uncovered by the resulting investigation itself. *See Russell v. Department of Justice*, 76 M.S.P.R. 317, 326 (1997). Moreover, an agency's failure to produce any evidence as to whether it initiates investigations of similarly situated non-whistleblowers, pursuant to *Carr* factor 3, is not deemed neutral or insignificant in this analysis, but instead may operate to tip the scale against the agency. *Id.* at 327-28 ("[A]lthough the reporting officials had strong evidence to support their reports concerning the appellant, this factor is far outweighed by their strong motive to retaliate and the lack of any evidence showing that they treated non-whistleblowers the same way they treated the appellant.").

alleged misconduct by subordinates. PFR File, Tab 3 at 18-24. He further claims that the agency has failed to prove that it would have investigated him in the absence of his whistleblowing. *Id.* In the present case, however, it was not an agency official, i.e., a supervisor or management official, who was responsible for initiating the investigation—it was a subordinate. IAF, Tab 13 at 26-30. In *Carr*, 185 F.3d at 1324-26, the Federal Circuit rejected a similar argument that the Board failed to consider the extent to which agency officials who were involved in her removal were influenced by complaints made against her by "support staff" employees who had been the subject of her whistleblowing. In particular, the appellant in *Carr* argued that the "support staff" employees would not have complained about her behavior and the agency would not have sought to remove her if she had not disclosed the staff's misconduct. *Id.* at 1324.

The court distinguished the facts in *Carr* from the Board's decision in *Russell*, 76 M.S.P.R. at 324, in which the agency had demoted an appellant based in part on the findings of investigations initiated by one of the two subjects of the appellant's disclosures. Specifically, the court in *Carr* found that the "critical difference" between the case before it and *Russell* was that the two subjects of the appellant's disclosures in *Russell* were agency officials, whereas, in *Carr*, the individuals who complained about the appellant were "line employees" who witnessed, and were affected by, her conduct. *Id.* at 1326. Thus, the court in *Carr* declined to hold that the Board erred in not taking into account the extent to which these "support staff" employees were motivated to retaliate, finding that such a holding would improperly shield the appellant from the consequences of her misconduct, simply because, although the relevant agency officials were not motivated to retaliate, they acted on information that came to them from "support staff" employees who were so motivated.[12] *Id.*

---

[12] In his initial decision, the administrative judge relied on *Staub v. Proctor Hospital*, 562 U.S. 411 (2011) to reach the same conclusion, i.e., that the BPA's retaliatory animus could not be attributed to the agency because he was a nonsupervisory employee and was not an agent of the agency. ID at 11-12. We do not find *Staub* instructive on

The facts of the instant appeal are similar to those in *Carr* and distinguishable from those in *Russell*. Specifically, although BPAs H.P. and A.R. had a motive to retaliate as subjects of the appellant's disclosures, they were subordinates, or "line employees," and not management officials. Furthermore, there is no evidence that BPAs H.P or A.R. had any influence over the agency officials who took the personnel actions against the appellant. *McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 62 (2011) (finding that, when applying the second *Carr* factor, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012). Nor does the record suggest that the appellant's disclosures regarding his subordinates' unaccounted absence, tardiness, insubordination, and dishonesty were critical of the agency such that they reflected poorly on the agency officials in their capacities as managers. *Cf. Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019) (finding that although the deciding official did not have a personal motive to retaliate, the administrative judge erred by failing to consider whether he had a "professional retaliatory motive" because the appellant's disclosures implicated the capabilities, performance, and veracity of agency managers and employees and implied that the agency deceived a Senate Committee); *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370-71 (Fed. Cir. 2012) (finding that the administrative judge took "an unduly dismissive and

_____

this matter because *Staub* concerned retaliation under a different statute (the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA)), with a different standard of causation. *See* 38 U.S.C. § 4311(c) (establishing a "motivating factor" standard of causation for USERRA). In fact, dicta in *Staub* suggests that the motivating factor causation standard in USERRA was dispositive and the result might be different if the standard of causation were merely "causal factor." 562 U.S. at 418-19; *see* 5 U.S.C. § 2302(b)(8), (9) (prohibiting agencies from taking personnel actions "because of" an employees' protected disclosures or activities). Nevertheless, for the reasons explained in this decision, we find that *Carr* is controlling and that it supports the administrative judge's conclusion.

restrictive view" in finding no evidence of a retaliatory motive when the appellant's disclosures "repeatedly cast [the agency] and, by implication, all of the responsible [agency] officials, in a highly critical light by calling into question the propriety and honesty of their official conduct").

In conclusion, there is no basis to impute the retaliatory motives of BPAs H.P. or A.R. onto the agency officials who took the personnel actions, nor is there any evidence that the agency officials had any independent retaliatory motive against the appellant. Accordingly, we find that the second *Carr* factor weighs in favor of the agency.

> *The agency failed to provide evidence that it takes similar actions against similarly situated employees who are not whistleblowers.*

The administrative judge found that there was no evidence relevant to the third *Carr* factor. ID at 10. Although an agency does not have an affirmative burden to produce evidence concerning each and every *Carr* factor, the Board has held that an agency's failure to present evidence of similarly situated employees cannot weigh in its favor. *Soto*, 2022 MSPB 6, ¶ 18. To the extent the appellant claims that the agency did not take similar actions against SBPA E.G. because she was not a whistleblower, we find that the nature of the accusations against her is not sufficiently similar to provide persuasive evidence regarding this factor. PFR File, Tab 3 at 16; *see, e.g.*, *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 34 (2013) (finding that the conduct of the comparator employees was not sufficiently similar to the appellant's conduct to provide persuasive evidence regarding the third *Carr* factor). Specifically, while the union's grievance accused the appellant of sexual harassment, it accused SBPA E.G. of failing to report harassment that she witnessed. IAF, Tab 13 at 26-30. We therefore find this factor to be neutral.

<u>We grant corrective action with respect to the proposed suspensions and the oral counseling.</u>

Weighing the *Carr* factors as set forth above, we find that the agency presented strong evidence in support of its investigation and reassignment, and its decision that the appellant was ineligible to hold an acting position, or to receive a cash award or a promotion while under investigation. In light of the fact that the second *Carr* factor weighs in favor of the agency, and the fact that the third *Carr* factor is neutral, we find that the agency proved by clear and convincing evidence that it would have investigated and reassigned the appellant and denied him an acting position, opportunity for promotion, and a cash award in the absence of the appellant's whistleblowing.

The weighing of the *Carr* factors is different, however, with respect to the agency's disciplinary actions. Unlike the investigation and reassignment, there was no basis to propose any discipline, and therefore, the first *Carr* factor cuts heavily in favor of the appellant. Although the second *Carr* factor still weighs in favor of the agency, and the third *Carr* factor is neutral, because the first *Carr* factor weighs so strongly in favor of the appellant, we find that the agency did not prove by clear and convincing evidence that it would have proposed or issued any discipline in the absence of the appellant's whistleblowing. Accordingly, we grant corrective action as it relates to the two proposed suspensions and the issued oral counseling.

**ORDER**

We ORDER the agency to rescind any documentation related to the October 30, 2014 proposed 3-day suspension, the February 13, 2015 proposed 3-day suspension, and the oral counseling issued on April 29, 2015. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or

Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR
COMPENSATORY DAMAGES**

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE PARTIES**

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

**NOTICE OF APPEAL RIGHTS**[13]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be underlined received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[14] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    _____
                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.):

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

CERTIFICATE OF SERVICE

      I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

U.S. Mail

Richard Walla
c/o Attorney Joy Bertrand
PO Box 2734
Scottsdale, Arizona 85251

<u>Appellant Representative</u>

U.S. Mail

Joy Bertrand
P.O. Box 2734
1826 N. 7th Avenue
Scottsdale, Arizona 85252-2734

<u>Agency Representative</u>

U.S. Mail

Lauren Barefoot
610 W. Ash St., Suite 1200
San Diego, California 92101

| | |
|---|---|
| *John Hayes* | |
| _01/15/2025_ | _____ |
| (Date) | John Hayes |